**KEVIN J. MCINERNEY, ESQ.**
18124 Wedge Parkway, Ste. 503
Reno, NV 89511
Phone: (775) 849-3811 | Fax: (775) 849-3866
Email: Kevin@mcinerneylaw.net
California Bar No. 46941  |  New York Bar No. 3541463


November 18, 2013


<u>VIA ECF</u>

Molly C. Dwyer, Clerk
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94119-3939

> Re: *Kilby v. CVS Pharmacy, Inc.*, Case No. 12-56130
>      *Henderson, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 13-56095

Dear Ms. Dwyer:

On behalf of plaintiff-appellant Nykeya Kilby in No. 12-56130 (*CVS*), and plaintiffs-appellants Kemah Henderson, Taquonna Lampkins, Carolyn Salazar, and Tamanna Dalton in No. 13-56095 (*JPMorgan Chase*), we submit this letter brief in response to the Court's November 4, 2013 Orders in *CVS* and *Chase*.

The only case pending in the California Court of Appeal that squarely raises the meaning of Wage Order 7-2001 §14(A)'s "suitable seats" provision (which is identical to the other "suitable seats" provisions throughout the Wage Orders) appears to be *Hall v. Rite Aid Corp.*, 4th DCA, Div. One, No. D06909.  The California Supreme Court has not to our knowledge considered a petition for review in any other case raising that issue, although as pointed out by plaintiffs-appellees Nisha Brown and Kathy Williamson in No. 12-17623 (*Wal-Mart*), the Supreme Court denied review in three "suitable seats" cases that raised a different issue (concerning the availability of PAGA penalties for violations of the Wage Orders' mandatory protections).  The only pending case under §14(A) in the California state trial courts, to our knowledge, is *McCormack v. Winco Holdings*,

1

No. RIC 120056 (Riverside Superior Ct), in which the Superior Court certified a California statewide class of Winco store cashiers on July 5, 2013.

Plaintiffs-appellants in *CVS* and *Chase* do *not* believe the panel should certify to the California Supreme Court the question of how to interpret "nature of the work," "reasonably permits," or "suitable seat" in California Wage Order 7-2001 §14(A) or 4-2001 §14(A). Both appeals can be resolved without waiting for a comprehensive construction of the suitable seats provision by the California Supreme Court; and certification would cause undue and unnecessary delay.

The central issue in both appeals is whether Judge Michael M. Anello correctly construed §14(A) in *CVS* as *not* requiring employers to provide any seating to employees (including *CVS* plaintiff Kilby, who spent more than 90% of her work days checking out customers at the stores' front-end cash registers, *CVS* ER697, 847-60) unless "many" or a "majority" of the work tasks listed in those workers' employer-created job descriptions could be performed in their entirety while seated. *See CVS* AOB at 12 (citing *CVS* ER9, 11); *Chase* AOB at 15 (citing *Chase* ER9-13, 16). This was the construction that the court used as the basis for granting summary judgment to CVS against plaintiff Kilby's individual claim and also as the basis for the court's previous denial of plaintiff Kilby's motion for certification of a class of CVS's California check-out cashiers. *CVS* ER11, 19-20. This was also the construction of §14(A) that Judge Philip S. Gutierrez adopted in *Chase* and used as the basis for denying certification of a class of Chase's California branch bank tellers. *See Chase* ER4-5 (describing with approval Judge Anello's reasoning in denying class certification in *CVS*), 9-13, 16 (applying same analysis in *Chase*).

There is no need for the panel to obtain the California Supreme Court's interpretation of the three phrases designated in the Court's November 4 Order before deciding whether the district courts' interpretation of §14(A) was contrary to the IWC's language and underlying intent.

Some cases under §14(A) will undoubtedly raise hard factual questions about whether the nature of a particular employee's work "reasonably" permits the use of seats or whether an employer has provided seating that is "suitable" under the circumstances – both of which are objective inquiries best decided upon a complete factual record. In *CVS* and *Chase*, though, the threshold (and likely determinative) issue is much more straightforward: whether the district courts erred in adopting a "holistic" construction of §14(A) that requires an assessment of an employee's "entire range of assigned duties" (as described in the employer's job

2

task descriptions) to determine whether the employee's "job as a whole" either "generally requires standing" or "reasonably permits the use of seats." *See CVS* Reply at 2-3. No ruling from the California Supreme Court as to the meaning of "nature of the work" or "reasonably permit" is required for this Court to decide, using traditional tools of statutory construction, whether this construction of §14(A) was legally erroneous for purposes of the courts' weighing of the Rule 23 factors. Nor does the Supreme Court need to interpret the term "suitable seats" in §14(A) for this appeal to be resolved, because CVS and Chase both concede they did not provide *any* seating to their non-disabled employees. *See CVS* AOB at 56-57; *Chase* AOB at 38-39.

Particularly in the class certification context, where the merits are not directly at issue and the principal question is whether the class members are similarly enough situated that the trial court's eventual merits ruling (including its construction of disputed statutory language) will resolve those class members' claims one way or another, any panel of this Court will be fully capable of determining for itself whether the California Supreme Court would likely adopt or reject the district courts' construction of §14(A) for purposes of class certification (and summary judgment, in the case of Ms. Kilby).

## I.     Whether the Court Should Certify Questions to the California Supreme Court

### A. The Decision Whether or Not to Certify is Within the Court's Sound Discretion.

California Rule of Court 8.548 states that the Ninth Circuit may certify a question of California law to the California Supreme Court if two threshold conditions are met: 1) the decision could determine the outcome of a matter pending in the Ninth Circuit; and 2) there is no controlling precedent. Even if those conditions are satisfied, however, a panel has discretion not to seek certification, *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974), just as the California Supreme Court has broad discretion to accept or reject certification based on "whether resolution of the question is necessary to secure uniformity of decision or to settle an important question of law, and *any other factor* the court deems appropriate." Rule 8.548 (emphasis added). Indeed, the California Supreme Court has often denied requests for certification from this Court where, as here, no compelling reason to tax its limited judicial resources has been established.

**B. The Issues of Statutory Interpretation Raised by These Appeals Can be Decided Without Certification and the Substantial Delays Certification Would Impose.**

The mere absence of controlling state law precedent is typically not enough to justify certification, for it is well established that "federal courts are not precluded from affording relief simply because neither the state supreme court nor the state legislature has enunciated a clear rule governing a particular type of controversy or claim." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994). "In a case requiring a federal court to apply California law, the court must apply the law as it believes the California Supreme Court would apply it." *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011) (quotation marks and citation omitted). "In the absence of a controlling California Supreme Court decision, the panel must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Id.* (same); *accord Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991), *cert. denied*, 502 U.S. 1073 (1992). Thus, while this Court may have an "obligation to *consider* whether novel state-law questions should be certified," *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist.*, 294 F.3d 1085, 1086 (9th Cir. 2002) (emphasis added), the Court should "invoke the certification process only after careful consideration and do[es] not do so lightly." *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (citing *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003)).

There is no need for certification to the California Supreme Court in these cases, where the construction of §14(A) adopted by the district courts in *CVS* and *Chase* can be evaluated – and, we believe, rejected – based on a straightforward application of standard principles of statutory interpretation, beginning with the plain text of the IWC's 17-word "suitable seats" provision.

The Ninth Circuit routinely interprets state law, including California state law as set forth in IWC Wage Orders. Just two months ago, the Ninth Circuit interpreted the meaning of the "nature of the work" exception to the off-duty meal period requirement in IWC Wage Order 4-2001. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013). Wage Order 4-2001 requires employers to provide employees an uninterrupted, off-duty, 30-minute meal period for every five hours of work, and permits "on duty" meal periods "only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job meal period is agreed to. …" Wage Order 4-2001 §11(A). The issue in *Abdullah* was whether the district

4

court erred in certifying a class of former and current employees of a private security guard company, who alleged that the company required them to work through meal periods. Resolving that issue required this Court to interpret the phrase "nature of the work" in §11(A) of the same Wage Order at issue in *Chase* (which is identical to the comparable provision in the *CVS* Wage Order 7-2001). After acknowledging that "[t]he California state courts have not addressed the substantive scope of the 'nature of the work' exception," the Court in *Abdullah* analyzed the applicable law and facts and issued a published opinion construing and applying the disputed Wage Order language. 731 F.3d at 958.

This Court also interpreted and applied other provisions of Wage Order 4-2001 in *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820 (9th Cir. 2011), a wage-and-hour class action in which the issue was whether unlicensed junior accountants were exempt from overtime protection as "professional" or "administrative" personnel under Wage Order 4-2001 §1(A). With respect to the "professional" exemption, this Court had to decide whether §1(A)(3)(a), which exempts licensed or certified accountants, is the only provision under which accountants may be exempt, or whether *unlicensed* accountants may also be exempt under §1(A)(3)(b) as persons "primarily engaged in an occupation commonly recognized as a learned or artistic profession." The Court noted that the issue was one of "first impression under California law." *Id.* at 825. Instead of certifying the issue, though, it "turn[ed] to 'ordinary principles of statutory interpretation,'" beginning with an analysis of the text of the statute. After concluding that it "need not go beyond this first step" due to the unambiguous plain meaning of the text, the Court held that "[t]he exemption plainly allows accountants to fall under subsection (b), subject to meeting the specific requirements of that subsection." *Id.* at 826-30 (quoting *Singh v. Superior Court*, 140 Cal.App.4th 387, 392 (2006)). *Abdullah* and *Campbell* thus demonstrate the Court's ability to interpret IWC Wage Orders, even in the absence of controlling precedent, and even when the impact of the interpretation has public policy implications.

In other contexts, too, the Court routinely decides issues of first impression requiring interpretation of California law under traditional principles of statutory construction. *See, e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944-45 (9th Cir. 2013) (applying California rules of statutory construction to interpret scope of Cal. Health & Safety Code §25982, which bans the sale of products that result from force-feeding birds to enlarge their livers); *Edgerly v. City & Cnty. of San Francisco*, 713 F.3d 976, 981-82 (9th Cir. 2013) (applying California rules of statutory construction to resolve dispute over

interpretation of Cal. Penal Code §853.5(a) concerning when a person arrested for an infraction can be taken into custody); *Bass v. Cnty. of Butte*, 458 F.3d 978, 981-82 (9th Cir. 2006) (applying California rules of statutory construction to determine whether the Unruh Act and Disabled Persons Act incorporate Title I of the Americans with Disabilities Act of 1990, thus providing a cause of action for employment discrimination); *In re First T.D. & Investment, Inc.*, 253 F.3d 520, 526-31 (9th Cir. 2001) (applying California rules of statutory construction to interpret scope of California Business and Profession Code §10233.2, which permits perfection of security interests without actual possession of the security instruments under limited circumstances, where "no state or federal court has had occasion to interpret" the statute before); *see also Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ.*, 668 F.3d 1052, 1061 (9th Cir. 2011) (applying California rules of statutory construction to determine who qualifies as a "parent" under various versions of California Education Code §56028, after California Supreme Court declined request for certification).

    As in these other cases, the core issue presented by these instant appeals may be decided as a straightforward matter of statutory interpretation.  There is no meaningful dispute that in both cases (as in *Walmart*): 1) all prospective class members spent considerable periods of their work days performing job tasks at a fixed workstation; 2) the employer had a no-seats-allowed policy for all non-disabled employees; and 3) the employer had accommodated the physical needs of disabled co-workers performing those same job tasks at the same and similar workstations by providing simple stools or other types of seating.  There is also no meaningful dispute in these cases that, in addition to the sedentary job functions class members performed at defendants' check-out registers or teller counters, most class members also spent some time during the work day performing other tasks in other locations where some standing or movement was required.  The question that must be resolved in these cases is whether the district courts will be able to decide on a classwide basis whether the nature of the class members' work reasonably permits the use of seats – which in turn will depend on whether §14(A) requires each employee to prove that *every* or almost every assigned task can be performed while seated, or whether (as plaintiffs contend) the appropriate inquiry is whether the class members' core check-out register or teller-counter tasks can themselves be performed while seated.

    Plaintiffs contend that the district courts erred in *CVS* and *Chase* in their construction of the phrase "when the nature of the work" (which requires a temporal focus on a particular task or set of tasks) and the phrase "reasonably permits the use of seats" (because an employee's work "reasonably" permits the

6

use of seats, no matter how "work" is defined, if that employee spends any significant amount of time performing tasks at a fixed workstation that could physically be performed while seated). While those terms have not yet been construed by the California Supreme Court, this Court can decide these appeals by applying standard principles of statutory interpretation to the language, structure, and purpose of the IWC's suitable seats provision. *Campbell*, 642 F.3d at 826.

Not only is certification to the California Supreme Court unwarranted, but such a request is also likely to be denied. As noted above, the California Supreme Court is not required to answer certified questions. Indeed, it regularly declines such requests. *See, e.g.*, *Sierra Pac. Power v. Hartford Steam Boiler Inspection & Ins.*, Cal. Sup. Ct. No. S199196 (Mar. 14, 2012) (denying request to answer questions about California insurance law); *Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ.*, Cal. Sup. Ct. No. S193299 (July 27, 2011) (denying request to answer question about allocation of special education costs); *Barnes-Wallace v. Boy Scouts of Am.*, Cal. Sup. Ct. No. S185299 (Oct. 13, 2010) (denying request to answer questions involving interpretation of California Constitution's freedom of religion clause). The California Supreme Court also denied a request from this Court to interpret the scope of the "outside salesperson" exemption under Wage Orders 1-2001 and 4-2001 (which exempts any employee whose job involves "selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities") in *D'Este v. Bayer*, 565 F.3d 1119, 1123 (9th Cir. 2009). In *D'Este*, this Court certified the question of whether pharmaceutical sales representatives qualify under this exemption because there was no controlling precedent or clear state court guidance on whether "selling tangible or intangible items" or "obtaining orders or contracts" include other aspects of the sales process short of consummating actual sales, and because resolution of the issue would affect multiple pending class action lawsuits throughout the state. *Id.* at 1122. The California Supreme Court denied the request. *D'Este v. Bayer Corp.*, Cal. Sup. Ct. No. S172832 (June 10, 2009). In light of *D'Este*, there is no reason to believe the California Supreme Court would grant certification here, where the appeals similarly turn on the validity of the district court's interpretation of a straightforward remedial provision of the IWC's Wage Orders, in this case the mandate that *all* employees *shall* be provided with suitable seats "when the nature of the work reasonably permits" the use of seats.

For these reasons, plaintiffs in *CVS* and *Chase* request that this Court *not* certify any questions in this case to the California Supreme Court.

7

Respectfully submitted,

KEVIN J. MCINERNEY, ESQ.

DOSTART CLAPP & COVENEY LLP

RIGHETTI GLUGOSKI P.C.

CAPSTONE LAW APC

SULLIVAN LAW GROUP LLP

ARIAS OZZELLO & GIGNAC LLP

ALTSHULER BERZON LLP

By: /s/ Kevin J. McInerney

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that the attached Supplemental Brief is proportionately spaced, has a typeface of 14 points or more, and contains 2,800 words.

Dated: November 18, 2013                          Respectfully submitted,

By: /s/ Kevin J. McInerney

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 18, 2013.

I certify that all participants in the cases are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Kember Murphy
Kember Murphy